## SUPREME COURT.

SOPHIA YERTORE, administratrix of, &c., GEORGE YERTORE, deceased agt. JOHN P. WISWALL and EBENEZER WISWALL, Executors of, &c., EBENEZER WISWALL, deceased.

It is no less necessary now than formerly, to set forth with legal precision, all the substantial facts which go to make up the cause of action, and especially where a new statutory remedy is invoked, in order to support the plaintiff's pleading.

An action for damages by the legal representatives of a person killed by the wrongful act, neglect or default of a wrongdoer—common carrier—brought under the statutes of 1847 and 1849, is sustainable against the *representatives* of the wrongdoer, because it is brought for the enforcement of a statutory right of property.

The *survivorship* of such an action is founded upon the idea that it is a right of *property*, and has a determinate pecuniary value; that it vests absolutely in the widow and next of kin, and is to be distributed to them in the same proportions, as the personal property of the deceased; consequently, survives against the executors or administrators of the wrongdoer by the express words of the Revised Statutes. (2 *R. S.* 447, § 1.)

Therefore, the *form* of the action, whether stated as upon contract or for a wrong, or both, (as in this case,) is not material.

*Albany General Term, March,* 1858.

WRIGHT, GOULD *and* HOGEBOOM, *Justices.*

THIS was an appeal by the defendants from an order of Mr. Justice GOULD, overruling a demurrer to the complaint. The complaint averred that Ebenezer Wiswall, deceased, having a ferry license from the county court of Albany county, authorizing him to run a ferry between Troy and West Troy, *undertook for the compensation provided in his license,* to convey George Yertore, deceased, across the Hudson river in a skiff, run at said ferry, and *carelessly and negligently* upset the skiff containing the said Yertore while he was so being conveyed across said river, whereby Yertore was drowned, and drowned by the *careless and negligent acts of the said Wiswall and his servant;* that he left a widow who is the plaintiff in the action; and that the *pecuniary injuries resulting from the death* of the said George Yertore *to his wife and next of kin,* are at least $5,000. The complaint proceeds to allege the subsequent death of Wiswall, and the appointment of personal representatives, both of Wiswall and Yertore, and demands judgment, "for the pecuniary injuries so sustained," in the sum of $5,000.

The defendants demurred to the complaint, and alleged for cause : 1. That the facts set forth were not sufficient to constitute a cause of action against Wiswall, in his lifetime.

2. That the cause of action, if any, died with said Wiswall, and did not survive against the defendants.

Mr. Justice GOULD overruled the demurrer, and the defendants appealed from his order to the general term.

GEO. VAN SANTVOORD, *for the defendants.*
R. A. PARMENTER, *for the plaintiff.*

By the court—HOGEBOOM, Justice. This action is not brought by or against either of the original parties to the transaction, and it becomes therefore essential to determine whether the cause of action survives. The complaint is inartificially drawn, which is the more to be regretted, inasmuch as the character of the cause of action must frequently depend upon the insertion or omission of particular averments in the complaint, which may be either inserted or omitted without violating the truth. Thus in an action against a common carrier—and a ferryman is a common carrier—the character of the action, whether contract or tort, the remedies by which it is to be enforced, arrest and imprisonment of the person, or process against the property alone, and perhaps the question whether it survived or not, certainly at the common law, depended upon the mode in which the facts were set forth in the complaint. If it was alleged that the carrier agreed for a stipulated compensation to transport the passenger safely, that not fulfilling his agreement he did not do so, and that in consequence thereof the plaintiff sustained damage in his business and engagements, the pleading was plainly upon contract, the remedy of the successful party was restricted to property, and the cause of action palpably survived both, in favor of the personal representative of a deceased plaintiff and against the personal representative of a deceased defendant. (1 *Ch. Pl.* (7*th ed.*) 114; *People* agt. *Gibbs*, 7 *Wend.* 29.)

On the other hand, if it was alleged merely that the plaintiff took passage, or was transported in the defendant's boat; that the defendant wrongfully or negligently navigated or propelled the same, so that in consequence thereof the boat was upset and the plaintiff injured; the pleading was as manifestly *ex delicto ;* the defendant might be arrested and held to bail, and on penal process his person imprisoned, and if either party died

Yertore, &c. agt. Wiswall, &c.

before verdict, the cause of action was forever extinguished. (1 *Ch. Pl.* (*7th ed.*) 106, 152 : *Code,* §§ 179, 288; *Burkle* agt. *Ellis,* 4 *How. Pr. Rep.* 288.)

And yet it is obvious that either statement might well consist with the real facts of the case. The one party did pay the ferriage, the other party in consideration thereof, did impliedly, and often expressly, agree to transport him safely. He did not in fact do so, but by negligence or wilfulness upset his boat, and caused serious injury to the aggrieved party, both to his person and his business.

It is, therefore, no less necessary now than formerly, to set forth with legal precision all the substantial facts which go to make up the cause of action, and especially where a new statutory remedy is invoked, in order to support the plaintiff's pleading.

Nevertheless, as the evident policy, as well as the express language of the Code, requires the courts to disregard mere form, and to confine their attention to matters of substance, and as a simple and obvious remedy by motion has been provided, to make vague and imperfect allegations more definite and certain, I think we should give to the averments in a pleading under the new system, a liberal and indulgent construction, for the purpose of ascertaining and giving effect to their real intent and object.

In the complaint under consideration, there is no direct reference to the statute of 1847. (*Laws of* 1847, *ch.* 450.) As it is a public act, I suppose it was not necessary that there should be. It is, however, fairly inferable, that the remedy sought was under that statute, for, 1. Every lawyer ought to know that independent of that statute, an action could not be brought in favor of the representatives of a deceased party, for an injury causing death, and basing the claim to relief on that fact.

2. The injury is alleged to have occurred through the careless and negligent acts of the defendant, resulting in death.

3. The pecuniary injuries resulting from such death, to the wife and next of kin, are averred at $5,000, as the ground and measure of damages, almost in the very words of the statute.

4. The judgment sought is $5,000, the limit of the statute, "for the pecuniary injuries so sustained."

I think we must therefore turn our attention to that statute, in connection with the amendment of 1849, (*Laws of* 1849, *ch.* 256,) to test the question whether the cause of action thereby allowed, is of a character which according to the rules of law, or to a fair interpretation of the statute itself, will survive against the representatives of the wrongdoer.

The question is one of considerable practical importance. Cases under it are likely often to arise. Views to some extent conflicting, have been expressed by different judges on the subject. Results of considerable magnitude, growing out of the occurrence which gave birth to this suit, and as is well understood, to several others, may be more or less dependent upon the decision of the question presented by this demurrer. And these considerations must be the apology for further discussing questions which have been already treated at length, and with ability, by two of my brethren.

The action authorized by the law in question, I regard as *new and original*, not merely as to the parties who may institute it, but as to the cause of action involved. It is not given to the party actually injured, for he is dead—it is not given on account of his personal sufferings, for they are limited to himself—it is not given to his personal representatives, because they represent him, but because they are convenient trustees for others. The damages recovered are not assets in their hands for the payment of debts or of legacies, nor would they be subject in any degree to the claims of creditors or of legatees, but they belong to the wife and the next of kin, as their *property*, made so by statute. They are graduated by the *pecuniary* injuries which result from the death, not to the man himself, not to his estate, not to his creditors, but to the wife and the next of kin. The loss which *they* sustain is the loss recovered ; the *pecuniary* interest which they have in his life, is the measure of damage. They are to have a fair and just *compensation* for the injuries by them sustained. They recover the value of his life—the value *to them*. It is a statutory property, created by

the statute and vested in the family of the deceased. Nobody else has a right to it, or to dispose of it. It is in some sense making merchandise of life, and, therefore, in a degree repugnant to refined and sensitive minds, but it is nevertheless the statute law of the land.

I think this view of the case is not answered by saying that the statute was intended merely to remove the legal disability of death, from actions brought to recover for personal injuries. It is true, the statute says, the party committing the injury shall be liable, notwithstanding the death of the person injured; but it does not say it, I think, for the purpose of continuing the action or the cause of action existing before the death, but for the purpose of declaring that the death of a party should not be, as it formerly had been, an effectual bar to a claim for damages against the wrongdoer, who ought to suffer for his misconduct. The action authorized, is a new action, not another action continued. It would not be proper, I think, if an action had been commenced during the life of the party injured, for the personal injuries sustained, to ask for a continuance of it after his death, under the provisions of this statute, but it is, "*an* action," a new and independent action, which is thus authorized. So the *cause* of action is not the same but different. It does not seem to me that it would be necessary or admissible in an action under this statute, to incorporate in the complaint any averments of personal injury or special damage, or circumstances of aggravation to the person injured; nor would it be proper to charge a jury that they might legitimately take these into consideration in making up their verdict. The naked questions are: 1. Was the death occasioned by the wrongful act, neglect or default of the party sought to be charged? and 2. What are the *pecuniary injuries* resulting from such death—the *pecuniary* injuries alone—no other—to the widow and next of kin of the deceased?

Nor do the words in the act, that the damages thus recovered shall be distributed among the widow and next of kin of such deceased person, according to the law for the distribution of personal property, help the defendant's construction. I think

they have the contrary effect.   I think they were *mainly* employed to designate an equitable standard of distribution among the several persons entitled to the amount recovered; but assuming the fact to be otherwise, then the argument is equally strong, that the statute recognizes these damages as property, as assets, as a part of the *estate* of the deceased person, and not as mere floating, equivocal and unsubstantial elements of claim, depending for their vitality and ultimate recovery upon the continued life of the party injured, and wholly dissipated by his death.

A similar construction was put upon this statute by the superior court of New-York, in *Safford* agt. *Drew,* (3 *Duer,* 627,) also by the court of queen's bench in England, in the case of *Blake* agt. *The Midland Counties Railway Co.,* (10 *Eng. Law & Eq. Rep.* 139,) which was a case under the statute of 9 and 10 *Victoria, ch.* 93, nearly similar to ours.   In the latter case, the court limited the recovery with great strictness to the mere pecuniary injury sustained by the family of the deceased, excluding not only all personal injury to the deceased party, but the mental sufferings of the survivors.

If this view of the statute be correct, then the subject of this action is *property*—the *value* of a *life*—property in the same sense that a horse or an article of furniture is property—property in the same sense that an estate for years or for life in lands, or a life insurance policy, is property—and being such, the question is whether the parties sustaining the loss have not the same remedy against the personal representatives of the wrongdoer, that they have in the case of other property wrongfully injured or destroyed.   I think they have, and that therefore the action is sustainable against the representatives of the wrongdoer, not so much because it is in *form* on contract or for a wrong, (and this particular complaint contains allegations of both kinds,) but because it is brought for the enforcement of a statutory right of property.   I think if the statute had simply declared that the widow and next of kin of a deceased party should have a right of action against the wrongdoer for the pecuniary injuries sustained by them by his death, when

caused by the wrongful act, default or neglect of such person, it would have created a cause of action, which from its intrinsic character, would survive against the personal representatives of the wrongdoer, not because the statute has so in terms declared, for it has not done so, but as a necessary consequence and attribute of the nature of the right thus conferred. (2 *R. S.* 447, § 1.)

This view of the case is strengthened, if not authoritatively maintained, by the opinion of Mr. Justice COMSTOCK, in the court of appeals, in *Quin* agt. *Moore*, (15 *N. Y. Rep.* 432.) He argues with much force the *assignability* of such a claim as is given by this statute ; and although the question was not perhaps directly involved in the case, or absolutely essential to its decision, so as to give it the binding force of an adjudication of a superior tribunal, the reasoning employed is directly applicable to the case at bar. If the demand is assignable, it would seem necessarily, also, to have the quality of survivorship, and both are founded upon the idea that it is a right of property, and has a determinate pecuniary value ; that it vests absolutely in the widow and next of kin, and is to be distributed to them in the same proportions as the personal property of the deceased. If this is so, then it survives against the executor or administrator of the wrongdoer, by the express words of the section of the Revised Statutes above quoted. (2 *R. S.* 447, § 1.)

The order of the special term should therefore be affirmed with costs.

NOTE.—The *first* section of the act of 1847, would seem to govern the question whether an action for damages brought by the representatives of a person killed by wrongful act, neglect or default, *survives* against the personal representatives of the wrongdoer. That section reads as follows :

" Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default, is such as would, (if death had not ensued,) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although

the death shall have been caused under such circumstances as amount in law to felony."

The Code requires in every action, a statement of facts constituting the cause of action. The cause of action under this statute, like others, arises with the defendant, and the facts upon which it is founded, determines the nature of the action. It is conceded to be for injuries to the person, *before* the death of the party injured. Does this statute then, by giving an action to the representatives of the party injured, after his death, create a new action or remedy, which survives against the defendant? That is, does it give an action on an *implied contract*, or one in *tort* for *injury to property*? Or if the statute is to be considered as giving a new action or remedy, is it not one for *injury to the person*, and which does not survive?

Are the facts constituting the cause of action creating the defendant's liability, changed by reason of the death of the party injured? The defendant is liable to an action for damages, *notwithstanding* the death of the person injured; and his agents and employees are liable to indictment notwithstanding his death. When the defendant is sued in such an action, his whole defence would seem to be that he did not by wrongful act, neglect or default, injure the person and cause his death. Death is the result of the injuries to the person. The wrongful act, neglect or default, are the causes of such result, and consequently, it would seem, should be stated as the cause of action for the damages therefor.

The second section of the act would seem only to prescribe the mode of bringing the action, and the manner of distributing the damages when recovered. "The jury may give such damages as they shall deem a fair and just compensation, (not exceeding $5,000,) with reference to the pecuniary injuries resulting from such death, to the wife and next of kin," &c. In other words, the court can say to the jury, that if they find the defendant liable in the action under this statute, on the facts proved, they may take into account the situation of the widow and children in settling upon the amount of damages.

This statute by its terms creates a remedy for the representatives of the party injured, (if he dies from his injuries,) against the defendant, if the action is brought within two years. Thus limiting the time of bringing the action to the same time of bringing actions which are highly penal, and to indictments—which fact goes to show, (in connection with the authority for finding an indictment for the same injury,) that the legislature intended to give speedy trials against the defendant or his agents, &c.; and it would seem to negative the idea that the action might for a series of years, like actions upon contract, run against the legal representatives of the defendant.

To the argument that the action is for the benefit of the widow and next of kin, and as they or the representatives who bring the action have received no personal injuries from the defendant, therefore the action cannot be sustained as an action for personal injuries; the answer is, that the legislature intended either to continue the same action that the deceased person might have sustained, (if living,) or they intended to give a *new and original action for personal injuries*—one by which the defendant could be made to respond in damages for the benefit of

the widow and children, *notwithstanding* the death of the party injured, (and in that respect a remedial statute,) and founded on the personal injuries which the deceased party had sustained by the wrongful act, neglect or default of the defendant. This view of the subject would seem to harmonize all parts of the act, without any overstrained construction. (*See Beach* agt. *Bay State Steamboat Co., ante, page* 1, *which so far as it touches this question, seems to present a similar view.*)

The cases of *Doedt* agt. *Wiswall,* (15 *How.* 128 ;) *Quin* agt. *Moore,* (15 *N. Y. R.* 432 ;) *Safford* agt. *Drew,* (3 *Duer,* 627,) and the foregoing case, are all decisions adverse to the views here expressed. It would seem, therefore, mere presumption to suggest even, anything that looks like opposition to such an array of authority. But as there has been considerable discussion on the subject, and likely to be considerable more, and as some of the judges seem to think it a very proper subject for a full and free discussion, the foregoing views are suggested.—[REPORTER.